**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHNNY LEE BIXLER,

       Petitioner,

v.                                                                                     Case No. 06-CV-11781

THOMAS BELL,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Johnny Lee Bixler, a state inmate currently incarcerated at Carson City Correctional Facility, in Carson City, Michigan, has filed a *pro se* petition for writ of habeas corpus. Petitioner challenges his convictions of three counts of first-degree criminal sexual conduct under Mich. Comp. Laws §750.520b(1)(e) and one count of armed robbery under Mich. Comp. Laws §750.529. He was sentenced as a third habitual offender under Mich. Comp. Laws §769.11 to four concurrent terms of three-hundred to five-hundred months' imprisonment.

Petitioner raises the following eleven issues on habeas review: (1) whether trial counsel was ineffective for failing to object to the prosecutor eliciting testimony from a witness that amounted to vouching for the truthfulness of the complainant; (2) whether trial counsel was ineffective when he failed to move for a mistrial after testimony referenced Petitioner's previous criminal history; (3) whether trial counsel was ineffective in failing to investigate and call witnesses who would have supported the Petitioner's consent defense; (4) whether the trial court abused its discretion in denying

Petitioner's motion for a new trial; (5) whether the trial court erred in requiring Petitioner to accept his appointed counsel or proceed *pro se* without advising him of the dangers of proceeding *pro se*; (6) whether Petitioner was wrongfully denied a new trial when the cumulative effect of the prosecution's misconduct resulted in fundamental unfairness and denial of due process; (7) whether the sentencing court failed to articulate reasons for the imposed sentence and erroneously based the sentence on unfounded allegations; (8) whether Petitioner's sentence was disproportionate, excessive, subjective, and violative of the Eighth Amendment; (9) whether Petitioner was denied effective assistance of counsel at sentencing; (10) whether Petitioner is entitled to a new trial and re-sentencing due to his ineffective assistance of counsel; and (11) whether Petitioner was denied effective assistance of appellate counsel due to his failure to raise the above stated claims on direct appeal.

For the reasons stated below, the court will deny Petitioner's request for habeas relief.

## I. BACKGROUND

Petitioner's conviction arose out of events which occurred on February 13, 2000. Petitioner and Catherine Gaps, the victim, were patrons of The Memphis Lounge (the "Lounge"). Petitioner and Ms. Gaps met for the first time at the Lounge. The two consumed alcoholic beverages and danced together. Gaps stopped dancing with Petitioner because he was touching her inappropriately while on the dance floor. They were the last two patrons at the Lounge and they left together. Gaps testified that she was forced into Petitioner's vehicle at gunpoint and that he punched her in her chest

prior to her getting into his vehicle. Petitioner did not testify at trial, but it is his position that Gaps voluntarily rode away with him from the Lounge.

It is undisputed that while in Petitioner's car, he engaged in vaginal penetration, as well as oral and digital sexual penetration, upon Gaps. It was her testimony that Petitioner performed these acts upon her without her consent, thus constituting criminal sexual conduct. Petitioner asserted, however, that the sexual activity was consensual. Gaps also testified that Petitioner stole money from her purse while in the vehicle and that his gun was visible. Afterwards, while Petitioner was driving, Gaps testified that she jumped out of the car, was able to remember three numbers from the license plate and ran into a nearby gas station for help. Petitioner was subsequently identified by Gaps as the individual who raped and robbed her and he was arrested for, charged with and convicted of both offenses.

Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals and raised three issues: (1) whether trial counsel was ineffective when he failed to object to a question and answer exchange regarding Gaps' behavior; (2) whether trial counsel was ineffective for failing to object to the admission of evidence regarding Petitioner's mug shot being used in a photographic line-up; and (3) whether trial counsel was ineffective when two witnesses, who would have been supportive of his defense, were not called to testify. Petitioner also filed a motion for remand so that a *Ginther* hearing could be conducted in order to make a record in support of his ineffective assistance of counsel claims. *See People v. Ginther,* 212 N.W. 2d 922 (Mich. 1973). Petitioner's request was granted and the *Ginther* hearing was held on

December 17, 2001. After two days of testimony, the trial court concluded that Petitioner's trial counsel's representation was not ineffective.

Following the *Ginther* hearing, the Michigan Court of Appeals affirmed Petitioner's conviction in a September 13, 2002 unpublished opinion. *People v. Bixler,* No. 230535, 2002 WL 31058316 (Mich. Ct. App. Sept. 13, 2002) (per curiam). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. The court denied Petitioner's application, which raised the following three issues: (1) whether the prosecutor engaged in misconduct by eliciting an opinion from the detective in charge of the case that essentially vouched for the truthfulness of Gap's testimony; (2) whether trial counsel was ineffective when he failed to object or move for a mistrial after the detective in charge of the case testified to obtaining Petitioner's mug shot for use in a photographic line-up, thereby disclosing Petitioner's criminal history; and (3) whether trial counsel was ineffective when he failed to investigate and call witnesses who would have supported his consent defense. *See People v. Bixler,* 658 N.W.2d 485 (Table) (Mich. Feb. 28, 2003).

Petitioner then filed a motion for relief from judgment with the trial court raising the following issues: (1) whether the trial court abused its discretion in denying Petitioner's motion for a new trial; (2) whether the trial court erred in compelling Petitioner to proceed *pro se* or proceed without conducting a hearing or properly advising him of the dangers of proceeding *pro se*; (3) whether Petitioner was wrongfully denied a new trial when the cumulative effect of the prosecution's misconduct resulted in fundamental unfairness and denial of due process; (4) whether the sentencing court failed to articulate reasons for the imposed sentence and erroneously based the

4

sentence on unfounded allegations; (5) whether Petitioner's sentence was disproportionate, excessive, subjective, and violative of the Eighth Amendment; (6) whether Petitioner was denied effective assistance of counsel at sentencing; (7) whether Petitioner is entitled to a new trial and re-sentencing due to his ineffective assistance of counsel; and (8) whether Petitioner was denied effective assistance of appellate counsel. On September 16, 2004, the trial court denied Petitioner's motion for relief from judgment. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals as well as the following three motions: (1) motion to remand for an evidentiary hearing; (2) motion to remand for re-sentencing; and (3) motion to amend the pleadings. On August 16, 2005, the Michigan Court of Appeals denied each of Petitioner's three motions and denied his delayed application for leave to appeal, stating that Petitioner failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bixler*, No. 260408, slip op. (Mich. Ct. App. Aug. 16, 2005)

Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court raising the same eight issues asserted before the Michigan Court of Appeals. The court denied relief stating that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bixler,* 708 N.W2d 406, 406-07 (Table) (Mich. 2006). On April 12, 2006, Petitioner filed the instant application for writ of habeas corpus.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions, and states in pertinent part:

5

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective for failing to: (1) object when the prosecutor elicited testimony from a witness that amounted to vouching for the truthfulness of the complainant; (2) move for a mistrial after testimony regarding

6

Petitioner's mug shot being used in a photographic line-up; and (3) investigate and call witnesses who would have supported Petitioner's consent defense.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668 (1984). First, the petitioner must show that the performance of counsel fell "below the objective standard of reasonableness." *Id.* at 688. In so doing, the petitioner must rebut the presumption that counsel's "challenged action might be considered sound trial strategy." *Id.* at 689. The second prong requires that the defendant "show there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the out come. *Id.* at 694.

### 1. Vouching

Relative to Petitioner's first basis for ineffective assistance of counsel, the remarks at issue are as follows:

> Q: Without telling us what she said, can you describe her demeanor or mannerisms?
>
> A: She was very upset, very hard to understand. I had to sit and wait a lot, long time for her to be able to gather herself to get a thought. At some point she would just talk so fast and other points she wouldn't talk. And it just, it was a very long process, a very long time.
>
> \* \* \* \* \*
>
> Q: Sir, obviously you're not a human lie or truth detector, but based on your experience with other sexual assault victims, how would you compare the demeanor and mannerisms and motives of Catherine Gaps with the others?

7

>A: I would say that her actions and mannerisms and the way she acted was totally consistent with somebody being sexually assaulted.
>
>Q: Not being there at the time of the alleged sexual assault, you don't know for sure?
>
>A: I do not.

Trial Transcript, 8/3/00, pp. 78-80.

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a *personal* belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993) (emphasis added). In this case, Petitioner claims that the prosecutor vouched for the credibility of Gaps through the testimony of Detective Jeffrey Pierog. Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness' testimony, thereby placing any perceived prestige of the office of the Macomb County prosecutor, in this case, behind the witness. *See United States v. Francis,* 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, prosecutorial vouching involves either blunt comments, *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony. *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994).

A review of the trial transcript does not indicate improper vouching, but rather the elicitation of testimony from an individual who is experienced in assessing whether or

8

not a person is a victim of sexual assault. That experience was used when he observed Gaps following her encounter with Petitioner in order to determine how to best handle the situation. Because the Court does not find that the prosecutor engaged in improper vouching, trial counsel was not ineffective when he failed to place an objection on the record relative to this testimony.

Moreover, Petitioner has not demonstrated that the result would have been different if this one brief line of questioning not occurred. *Strickland*, 466 U.S. at 694. Specifically, Gaps herself testified that Petitioner sexually assaulted her and two other officers, one nurse and one technician testified to her distressed state after the alleged incident. (*See* Trial Tr. at 12-15, 38-39, 46, 52-56.) Accordingly, habeas relief is not warranted as to this claim.

### 2. Criminal History

Second, Petitioner claims that trial counsel was ineffective when he failed to after a witness referenced Petitioner's mug shot. If a request for a mistrial would have likely been futile, however, Petitioner is not entitled to habeas relief on this claim. *Morales v. Russo,* 401 F. Supp.2d 170, 180-81 (D. Mass. 2005).

The pertinent testimony is as follows:

Q: When you are investigating a potential suspect, do you attempt to determine his appearance?

A: Yes.

Q: Why?

A: To see if it matches the suspect information that he was involved in a crime       .

Q: Did you obtain a photograph of Bixler?

9

> A: Yes, I did.
>
> Q: Where did you obtain that photograph?
>
> A: It was, I was fortunate enough to have him in our computer system, a mug shot of him.
>
> Q: As a result of having that mug shot, what did you do with it, did you compare it with the description given to you by Catherine Gaps.
>
> A: Yes, it was compared and he did fit the description given to me by Ms. Gaps.

(8/3/00 Trial Tr. at 81-82). In denying Petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals stated as follows:

> Defendant correctly notes that a prosecutor may not indiscriminately introduce prior bad acts of a defendant. *See* MRE 404(b)(1). However, this Court has held that a brief reference to a mug shot photograph being used in a photographic lineup does not constitute error requiring reversal. *People v. Drew,* 183 Mich. App. 57, 61; 268 N.W.2d 284 (1978). Morever, in light of the additional evidence introduced at trial, we conclude that the brief reference to a mug shot, with no indication regarding the circumstances under which the mug shot was taken, did not likely affect the outcome of the case. The defendant failed to establish ineffective assistance of counsel with respect to that issue. *People ve. Snider,* 239 Mich. App. 393, 423-424; 608 N.W.2d 502 (2000).

*People v. Bixler,* No. 230535, 2002 WL 31058316, *5 (Mich. Ct. App. Sept. 13, 2002) (per curiam). The court will deny habeas relief relative to this claim for three reasons.

First, the mug shot reference was fleeting and not repeated and Petitioner's prior bad acts as they related to the mug shot were not mentioned. Therefore, under Michigan law, counsel's motion for a mistrial would have been futile. *See People v. Drew*, 268 N.W.2d at 284.

Second, the alleged admission of prior bad act evidence against a habeas petitioner in violation of MRE 404(b) does not entitle him to habeas relief because there

is no clearly established Supreme Court law which holds that a state violates a petitioner's due process rights by admitting propensity evidence in the form of prior bad act evidence. *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). The admission of a habeas petitioner's prior mug shots into evidence is also non-cognizable on federal habeas review. *See Grant v. Kropp,* 407 F.2d 776, 777-78 (6th Cir. 1969).

Third, even if the court were to find that trial counsel was remiss in failing to move for a mistrial, the second prong of the ineffective assistance of counsel test would not be met, as Petitioner has failed to show how trial counsel's conduct prejudiced his position in this matter in light of the DNA evidence, eyewitness testimony and medical and law enforcement testimony admitted into evidence. Because Petitioner has failed to show how this fleeting mug shot reference made any difference in the outcome of the trial in light of the overwhelming evidence against Petitioner, habeas relief is denied relative to this claim.

### 3. Supporting Testimony

Finally, Petitioner maintains that trial counsel was ineffective due to his failure to investigate and to call certain witnesses to testify on his behalf. Specifically, Petitioner claims that Joseph Rastell and Peter Frontera would have supported his consent defense by testifying that Gaps left the Lounge with the him in his car willingly.

"[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell,* 303 F.3d 720, 748 (6th Cir. 2002). Petitioner must also overcome

the presumption that under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Although Petitioner identifies two witnesses and states that their testimony would have been beneficial in supporting his defensive theory, the court does not find that Petitioner has overcome the trial strategy presumption. The Court of Appeals explained the basis for its finding as follows:

> With regard to Rastell, the trial court, which was in a better position than this Court to assess the credibility of the testimony at the evidentiary hearing, concluded that Glanda [trial counsel] had determined that "more harm than good would be accomplished by [Rastell's] testimony." Accordingly, defendant has simply not overcome the presumption that Glanda's failure to call Rastell, despite mentioning Rastell in his opening statement, constituted sound trial strategy. *See Knapp, supra* at 385-386. More significantly, we conclude that Rastell's proposed testimony as indicated in his statement simply would not have affected the outcome of the case. Indeed, his testimony would have been consistent with the prosecutor's theory that defendant forced CG [Ms. Gaps] into his car.
>
> With regard to Frontera, we agree with the trial court that Glanda's failure to locate this additional witness from the Memphis Lounge was not unreasonable under prevailing professional norms, given Glanda's testimony that defendant did not bring Frontera's existence to his attention before trial. Moreover, we conclude that Frontera's testimony would not have likely affected the outcome of the case, especially given that his testimony about the manner in which CG entered a vehicle after the closing of the Memphis Lounge contradicted the testimony of defense witness Bonnie Jean Sellers.
>
> \* \* \* \*
>
> He argues that if Glanda had called Frontera and Rastell, the trial court would not have been justified in giving the "no evidence of consent" instruction ... We cannot discern, however, how Frontera's and Rastell's testimony would have affected the trial court's giving of this instruction, because they in no way testified that the sex between defendant and CG was consensual.

*People v. Bixler,* No. 230535, 2002 WL 31058316, *6 (Mich. Ct. App. Sept. 13, 2002) (per curiam)**.**

The court agrees with the Michigan Court of Appeal's analysis of Petitioner's claim and finds that the Michigan Court of Appeals did not apply *Strickland* unreasonably when it concluded that Petitioner's attorney was not ineffective for failing to call Rastell and Frontera as defense witnesses.

### B. Procedural Default & Cause

Respondent claims that Petitioner's remaining issues, which include ineffective assistance of appellate counsel claims, have been procedurally defaulted because these issues were raised for the first time in Petitioner's motion for relief from judgment. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). In the habeas context, this precludes federal courts from reviewing claims that a state court has declined to address because of a petitioner's noncompliance with a state procedural requirement. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds. *Coleman*, 501 U.S. at 730.

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States,* 975 F.2d 1207, 1213-14 (6th Cir. 1992). The Michigan rule, which precludes collateral attack on

non-jurisdictional claims that could have been raised on direct appeal, has been recognized as being "firmly established" so as to constitute an adequate state law ground barring habeas relief. *Luberda v. Trippett,* 211 F.3d 1004, 1008 (6th Cir. 2000). Petitioner responds by claiming that the one-line January 30, 2006 order from the Michigan Supreme Court denying relief due to his failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)" is not a sufficiently reasoned opinion to provide a foundation for a procedural default analysis. *See People v. Bixler,* 708 N.W2d 406 (Table) (Mich. 2006).

However, where the Michigan Supreme Court denies leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," even if stated in a one-sentence order, the court has provided sufficient explanation on the procedural default based decision. *See Hargrave-Thomas v. Yukins,* 374 F.3d 383, 387-88 (6th Cir. 2004). "Despite it brevity, the order constituted a 'reasoned' judgment that adequately explained its procedural basis." *Id.* at 388.

Therefore, all the remaining eight habeas claims raised in Petitioner's motion for relief from judgement are procedurally defaulted, unless he can establish cause for the default and prejudice resulting from the default, or a fundamental miscarriage of justice. *Wainwright*, 433 U.S. at 87. To establish cause, the petitioner must present a substantial reason to excuse the default. *Coleman*, 501 U.S. at 750. Cause must be something that cannot be attributed to the petitioner. *Id.* A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,*

14

477 U.S. 495-96 (1986). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324 (1995). In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted but with due regard to any unreliability of it and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

Petitioner maintains that the cause for his procedural default is the ineffective assistance of his appellate counsel. In order to show that he was denied effective assistance of appellate counsel, Petitioner must meet the *Strickland* standard. *See Strickland*, 466 U.S. at 689. Also, Petitioner must show that appellate counsel failed to raise an issue that was reasonably likely to have changed the result on appeal. *Greer v. Mitchell,* 264 F.3d 663 (6th Cir. 2001). It is well-established that a criminal defendant does not have a constitutional right to require appellate counsel to raise every non-frivolous issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel

15

may provide deficient performance bringing about prejudice by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal.  *Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his subsequent motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel filed an extensive brief on appeal that raised three issues relating to Petitioner's ineffectiveness of counsel claim.  Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default.  *Grant v. Rivers,* 920 F.Supp.769, 782 (E. D. Mich. 1996).  The crux of the remaining eight claims can reduced to three issues: (1) whether Petitioner was properly sentenced; (2) whether Petitioner's request for a new trial  was wrongfully denied; and (3) whether the court erred by compelling Petitioner to either represent himself or accept representation from the appointed attorney.  These defaulted claims are not "dead-bang winners."

First, The Eighth Amendment does not require strict proportionality between the crime and sentence.  *Harmelin v. Michigan,* 501 U.S. 957, 965 (1991).  Therefore, there is no federal constitutional right to individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Moreover, the alleged violation of state law as announced in *Milbourn* is not a cognizable claim on habeas review. *Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Atkins v. Overton*, 843 F.Supp. 258, 260 (E.D. Mich. 1994)).  It is

well-established that habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Accordingly, Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

Second, Petitioner is not entitled to the writ based upon the state trial court's denial of his motion for a new trial. Federal habeas courts may not correct a state court's misapplication of its own law. *See Estelle*, 502 U.S. at 67-68.

> The criteria for a trial court in granting or denying new trial are matters of state law. As such an incorrect application would not be grounds for federal habeas corpus relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Hill v. United States,* 368 U.S. 424, 428 (1962). Because Petitioner has failed to demonstrate such a fundamental defect, this claim also does not qualify as a "dead-bang winner."

Finally, the court has reviewed the record and does not find the legal representation choices provided by the trial court to have been unreasonable. While it is true that an indigent defendant is entitled to appointed counsel, there is no Supreme Court authority for the proposition that an indigent defendant is entitled to counsel of his choosing. In fact, the Supreme Court has held that the Sixth Amendment does not even guarantee a "meaningful relationship between the indigent defendant and his attorney. *Morris v. Slappy,* 461 U.S. 1, 14 (1983).

> Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to

17

adequate representation, but those who do not have the means to hire
their own lawyers have no cognizable complaint so long as they are
adequately represented by attorneys appointed by the courts.

*Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989).

Because these defaulted claims are not "dead-bang winners," Petitioner has failed to establish cause for his procedural default by appellate counsel's failure to raise the above stated claims on direct review. *Meade v. Lavigne,* 265 F. Supp. 2d at 872. Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred nor that he is actually innocent as set forth above. The court need not address the issue of prejudice when the petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray,* 477 U.S. 527, 533 (1986).

Accordingly, Petitioner's procedurally defaulted issues are barred from habeas review and relief is denied as to those claims.

### C. Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an

intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate the court's assessment of Petitioner's claims because clearly established federal law, as determined by the Supreme Court, demonstrates that his claims are legally deficient.

## IV. CONCLUSION

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

        s/Robert H. Cleland  
        ROBERT H. CLELAND  
        UNITED STATES DISTRICT JUDGE

Dated: December 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 26, 2007, by electronic and/or ordinary mail.

        s/Lisa G. Wagner  
        Case Manager and Deputy Clerk  
        (313) 234-5522